Weygandt, C. J.
The sole question of law here presented is whether these defendants, the Ohio State University Hospital and the board of trustees of the university, are suable in tort.
It is agreed that The Ohio State University is not a chartered corporation.
Further, it is agreed that the Ohio State University Hospital is not a separate entity but is operated by the board of trustees of the university.
The crux of this controversy is the significance of Section 3335.03, Revised Code, reading as follows:
“The trustees and their successors in office shall be styled the ‘Board of Trustees of The Ohio Stale University,’ with the right as such, of suing and being sued, of contracting and being contracted with, of making and using a common seal, and altering it at pleasure.”
Section 16, Article I of the Constitution of Ohio, reads in part:
“Suits may be brought against the state, in such courts and in such manner, as may be provided by law. ’ ’
Has the General Assembly expressly provided by law for suits in tort against the state or its instrumentalities such as the defendants in this action? The lower courts were unanimous in their view that the provisions of Section 3335.03, supra, are not susceptible of that construction.
*51 Is this correct?
The above-quoted statute was enacted in the year 1870. The constitutional provision was not adopted until 1912. Hence, the statute obviously was not enacted pursuant to the constitutional provision, and, according to its own terms, the latter is not self-executing. Raudabaugh v. State, 96 Ohio St., 513, 118 N. E., 102.
In the syllabus in the case of Overholser v. National Rome for Disabled Volunteer Soldiers, 68 Ohio St., 236, 67 N. E., 187, 96 Am, St. Rep., 658, 62 L. R. A., 936, this court held:
“1. The National Home for Disabled Volunteer Soldiers is a corporation created by Congress for the purpose of performing an appropriate and constitutional function of the federal government, and for national purposes only; and as such it is a part of the government of the United States, and cannot be sued in an action sounding in tort.
“2. The grant of power to sue and be sued at law and in equity applies to such matters only as are within the scope of the other corporate powers of the defendant, and it does not authorize such corporation to be sued for a tort.”
And in the opinion appears the following rationale by Davis, J.:
" * ** A suit against a public corporation having no other powers than the performance of a function of the government and accomplishing no other object, is plainly a suit against the government and its property, although nominally it is a suit against the corporation only. This principle was applied by this court in Finch v. Board of Education, 30 Ohio St., 37, 17, in which it was held that in the absence of a statute creating the liability, a board of education, which was incorporated by an act of the General Assembly, passed March 9, 1819, was not liable in its corporate capacity for damages resulting from its negligence in erecting and maintaining a school building. It was held that the defendant was ' a public agent employed in administering the common school system of the state,’ and that there is no principle of the common law by which the action could be supported.
* *
"* * * The United States has consented to be sued on its *52 contracts, either in the Court of Claims, or in a Circuit or District Court of the United States; but it has not yet consented to be liable to actions for torts. Belknap v. Schild, 161 U. S., 17. Therefore, we are not persuaded by the argument that the power conferred upon this corporation, of suing and being sued both at law and in equity, must be construed as a consent by Congress that this particular governmental agency may be sued upon any cause of action, whether sounding in contract or in tort. On the contrary, we are constrained, upon all considerations, to regard this as imposing the power and liability to sue and be sued in respect to such matters only as are within the scope of the other corporate powers of the defendant. The National Home for Disabled Soldiers was not given the right to commit wrongs upon individuals. It was not contemplated that it would do so. It was created and is perpetuated by the federal government for a very different purpose. Hence, it can not be inferred that Congress meant to impose a liability upon this corporation so unusual, so different from its general policy and so different from the liabilities imposed on other public agencies.
“The defendant has no corporate fund, nor any property applicable to the payment of a judgment in such an action as this. A judgment could not be satisfied except by seizing upon the property and funds supplied by the general government for the purpose for which the defendant was created, and without which it must cease to exist. Execution against the defendant would not only bring on conflict between the state and federal governments, but if allowed, it would tend to the destruction of this splendid national charity. * * *
“We, therefore, conclude that the right to sue The National Home for Disabled Volunteer Soldiers for a tort was never contemplated nor conferred. In Finch v. Board of Education, supra, this court so construed the power ‘to sue and be sued’ contained in the charter of the board of education. Likewise in Board of Commissioners v. Mighels, 7 Ohio St., 109, 114-117.”
Also, in 160 A. L. R., 7, appears the following pertinent comment under the heading of ‘ ‘ Tort Liability of Public Schools and Institutions of Higher Learning,” beginning at page 52:
*53 “Since a state cannot be sued without its consent, it is the general rule that, even assuming that a state is the proper party defendant in an action in tort in connection with a state or public college, university, or other institution of higher learning under its charge and control, the state is immune from suit therefor unless the Legislature has given its consent to the suit. And, even where the Legislature has consented that a state may be sued generally, in accord with the general view that a state is immune from tort liability in the absence of a constitutional or legislative enactment to the contrary, it is the general rule that the state is not liable in tort for acts or omissions in connection with a public college, university, or other institution of higher learning under its direct control and supervision, in the absence of a constitutional or statutory enactment imposing such liability, at least while engaged in governmental functions or activities.
“And, even though a public college, university, or other institution of higher learning or its governing or managing board is incorporated and amenable to suit, subject to certain exceptions and limitations hereinafter noted, it is the general rule that such institution or its governing or managing board is a mere agent or instrumentality of the state and accordingly is immune from tort liability in the absence of a constitutional or legislative enactment to the contrary, at least for negligence while performing or engaged in governmental functions or activities, since, while so engaged, they partake of the state’s immunity. ’ ’
To the same effect is the following more recent summary in 25 A. L. R. (2d), 210:
“As a general proposition, a governmental unit or agency is immune from liability for torts committed in connection with operating a hospital where it is operated in the performance of a governmental function. ’ ’
Consistent with the foregoing views, this court finds no error in the action of the lower courts in sustaining the demurrer to the plaintiff’s petition. If the law of Ohio is to be changed to authorize tort actions against the state, this important question of legislative policy must be determined by the General Assembly acting under the thus far unused constitutional legisla *54 tive power vested in it by the people approximately half a century ago.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Zimmerman, Herbert and Peck, JJ., concur.
Taft, J., concurs in paragraphs one, two and three of the syllabus and in the judgment.
Matthias and Bell, JJ., concur in paragraphs one, two, three and four of the syllabus but dissent from paragraph five of the syllabus and from the judgment.